IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JESUS A. MARTINEZ,

    Plaintiff,

v.

STATE OF OREGON; COUNTY OF MULTNOMAH;
and DEP. C. SMITH 58608,

    Defendants.

Case No. 3:19-cv-01385-JR

ORDER TO DISMISS

MOSMAN, J.

Plaintiff, an inmate currently confined at the Eastern Oregon Correctional Institution, brings this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's claims arise from his prior incarceration at the Multnomah County Inverness Jail ("MCIJ"). Pursuant to an Order entered this date, the Court granted plaintiff's Application to Proceed *In Forma Pauperis*. However, for the reasons set forth below, the Court dismisses plaintiff's Complaint.

## BACKGROUND

In the caption of his Complaint, plaintiff identifies as defendants the State of Oregon, the County of Multnomah, and Dep. C. Smith. At page 3 of the Complaint, however, he identifies the defendants as Dep. C. Smith, Deputy Romey, and the Multnomah County Jail.

Plaintiff alleges three separate claims for relief, though the first two claims are virtually identical. In his first two claims, he alleges that at MCIJ on June 14, 2018, Dep. Smith refused to allow plaintiff to attend a religious service. He alleges that when he subsequently requested a grievance form, Dep. Smith informed him that he had no right to attend the service and that attendance was a privilege. He alleges that when he informed Dep. Smith that he did have the right to attend the service, Deputy Romey told him to shut up and return to the dorm, and then sent plaintiff to disciplinary segregation for disrespect or harassment. Plaintiff alleges these actions violated his rights under Article I, Section 2 of the Oregon Constitution.

In plaintiff's third claim, he alleges that while he was held at MCIJ, he was "mistreated," and was placed in disciplinary segregation twice. He alleges that he believes this occurred because of his race and because he tried to file a grievance. Plaintiff does not identify any individual officers involved these alleged occurrences. Plaintiff alleges this violated his right not to be treated with unnecessary vigor under Article I, Section 13 of the Oregon Constitution. By way of remedy for both claims plaintiff seeks money damages.

## STANDARDS

A district court must dismiss an action initiated by a prisoner seeking redress from a governmental entity or officer or employee, if the Court determines that the action (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief

2 - ORDER TO DISMISS

against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2) & 1915A(b). When a plaintiff is proceeding *pro se*, the court must construe the pleadings liberally and afford the plaintiff the benefit of any doubt. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Moreover, before dismissing a *pro se* civil rights complaint for failure to state a claim, the court supplies the plaintiff with a statement of the complaint's deficiencies. *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623-24 (9th Cir. 1988); *Eldridge v. Block*, 832 F.2d 1132, 1136 (9th Cir. 1987). A *pro se* litigant will be given leave to amend his or her complaint unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *Karim-Panahi*, 839 F.2d at 623; *Lopez v. Smith*, 203 F.3d 1122, 1130-31 (9th Cir. 2000).

## DISCUSSION

### I. Procedural Deficiency

Pursuant to Rule 10(a) of the Federal Rules of Civil Procedure, "[t]he title of the complaint must name all the parties; the title of other pleadings, after naming the first party on each side, may refer generally to other parties." As noted, the defendants identified in the caption of plaintiff's Complaint differ from those identified at page 3. Should plaintiff file an Amended Complaint curing the substantive deficiencies noted below, the Court advises plaintiff to clearly identify all intended defendants in the caption thereof.

### II. Substantive Deficiencies

#### A. Defendant "State of Oregon"

As noted, in the caption of his Complaint plaintiff names as a Defendant as the "State of Oregon." "It is well established that agencies of the state are immune under the Eleventh Amendment from private damages or suits for injunctive relief brought in federal court." Savage

v. Glendale Union High School, 343 F.3d 1036, 1040 (9th Cir. 2003). Plaintiff's claims against the "State of Oregon" must, therefore, be dismissed.

### B. Violations of Rights Under the Oregon Constitution

As noted, plaintiff alleges the individual defendants violated his rights under Article I, Sections 2 and 13 of the Oregon Constitution. Violation of state tort law, state regulations, or any other state law is not sufficient to state a claim for relief under 42 U.S.C. § 1983. To state a claim under § 1983, there must be a deprivation of *federal* Constitutional or statutory rights. See Paul v. Davis, 424 U.S. 693 (1976); Galen v. County of Los Angeles, 477 F.3d 652, 662 (9th Cir. 2007) ("Section 1983 requires [plaintiff] to demonstrate a violation of federal law, not state law"). Although the Court may exercise supplemental jurisdiction over state law claims, plaintiff must first have a cognizable claim for relief under federal law. See 28 U.S.C. § 1367. Because the Court finds below that plaintiff fails to state any cognizable federal claims, the Court will not exercise supplemental jurisdiction over plaintiff's putative state law claims at this juncture.

### C. Violations of Rights Under the U.S. Constitution

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988). A plaintiff must also allege that he suffered a specific injury as a result of a particular defendant's conduct and an affirmative link between the injury and the violation of his rights. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976). Plaintiff does not explicitly identify any federal Constitutional or statutory right violated by defendants. The Court is mindful, however, of the requirement to liberally construe

4 - ORDER TO DISMISS

plaintiff's *pro se* Complaint and will address the potential federal constitutional claims which may arise based on the alleged facts.

### 1. Free Exercise of Religion

An inmate's First Amendment right to freely exercise his religion is necessarily restricted by incarceration. O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987). To comply with the Free Exercise Clause, prison officials must simply allow prisoners a reasonable opportunity to exercise their religious freedom. Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972) (per curiam).

To state a viable free exercise claim, a plaintiff must allege that a government official: (1) "substantially burden[ed]" the plaintiff's exercise of a sincerely held religious belief; and (2) did so in an unreasonable manner, i.e., the official's actions were not "reasonably related to legitimate penological interests." Jones v. Williams, 791 F.3d 1023, 1031-32 (9th Cir. 2015); see also Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008) (citations omitted). "[G]overnment action places a substantial burden on an individual's right to free exercise of religion when it tends to coerce the individual to forego [his or] her sincerely held religious beliefs or to engage in conduct that violates those beliefs." Jones, 791 F.3d at 1031-33 (a "substantial burden" must be "more than an inconvenience on religious exercise") (citations omitted). "[T]he availability of alternative means of practicing religion is a relevant consideration" for claims under the First Amendment. Holt v. Hobbs, 574 U.S. 352, 135 S.Ct. 853, 862, 190 L.Ed.2d 747 (2015).

Plaintiff alleges that he was denied the opportunity on one occasion to attend a religious service. Plaintiff does not allege a sincerely held religious belief. Nor does he explain how the lack of attending one religious service substantially burdens his religious practices such that it amounts to a constitutional violation. See Abpikar v. Martin, Case No. 11-1793, 2015 WL 4413841, at *5

5 - ORDER TO DISMISS

(E.D. Cal. July 17, 2015) (dismissing First Amendment free exercise of religion claim where plaintiff was denied participation in group worship service but failed to allege facts showing denial placed a substantial burden on the exercise of his religion). Plaintiff also fails to allege whether the denial was reasonably related to legitimate penological interests and whether he had alternative means to practice his religion. Accordingly, plaintiff does not state a First Amendment Free Exercise claim upon which relief may be granted.

### 2. Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a § 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012).

Adverse action taken against a prisoner "need not be an independent constitutional violation. The mere threat of harm can be an adverse action." Watison, 688 F.3d at 1114 (internal citations omitted). A causal connection between the adverse action and the protected conduct can be alleged by an allegation of a chronology of events from which retaliation can be inferred. Id. The filing of grievances is a protected activity. Rhodes, 408 F.3d at 567-68. The plaintiff must allege either a chilling effect on future First Amendment activities, or that he suffered some other harm that is "more than minimal." Watison, 668 F.3d at 1114. A plaintiff successfully pleads that the action did

not reasonably advance a legitimate correctional goal by alleging, in addition to a retaliatory motive, that the defendant's actions were "arbitrary and capricious" or that they were "unnecessary to the maintenance of order in the institution." Id.

Here, plaintiff has asserted only a conclusory allegation that he was subject to retaliatory conduct after he attempted to exercise his right to redress his grievances. Plaintiff has not alleged any facts demonstrating that a named defendant took some adverse action against plaintiff because of plaintiff's protected conduct, that the adverse action chilled plaintiff's exercise of his First Amendment rights, and that the adverse action did not reasonably advance a legitimate penological goal. Therefore, plaintiff has not pled a cognizable claim for retaliation in violation of the First Amendment.

### 3. Discipline

In his third claim, plaintiff complains that he was twice placed in disciplinary segregation. The Due Process Clause of the Fourteenth Amendment prohibits the government from depriving "any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV § 1. "To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" Wright v. Riveland, 219 F.3d 905, 913 (9th Cir. 2000) (quoting Portman v. County of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993)). Liberty interests can arise directly from the Constitution or from state law. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). In the prison context, liberty interests are "generally limited to freedom from restraint [that] . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin

v. Conner, 515 U.S. 472, 484 (1995) (citations omitted); accord Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007).

If a liberty interest is adequately alleged, the minimum procedural requirements for prison disciplinary proceedings are: (1) written notice of the charges at least 24 hours before the hearing; (2) an impartial hearing body; (3) the right to call witnesses and present documentary evidence when consistent with institutional safety and correctional goals; (4) assistance from another inmate or staff if the prisoner is illiterate or the issues complex; and (5) a written statement of the evidence relied on and reasons for the disciplinary action. Wolff v. McDonnell, 418 U.S. 539, 563-71 (1974); Superintendent v. Hill, 472 U.S. 445, 454 (1985) (holding a finding of guilt must be supported by "some evidence in the record").

Plaintiff does not allege facts establishing the existence of a liberty interest which gives rise to the due process protections enumerated in Wolff. Nor does plaintiff allege that, in the event a protected liberty interest was implicated, that he was denied any procedural protections. Accordingly, to the extent plaintiff's Complaint is construed as an attempt to allege he was improperly subjected to disciplinary segregation, plaintiff fails to state a claim upon which relief may be granted.

### 4. Municipal/Jail Liability

"Persons" under 42 U.S.C. § 1983 are state and local officials sued in their individual capacities, private individuals and entities which act under color of state law, and/or the local governmental entity itself. Vance v. County of Santa Clara, 928 F.Supp. 993, 995-96 (N.D. Cal. 1996). The "Multnomah County Jail" is managed by and/or a department of Multnomah County, but it is not a "person" subject to suit under § 1983. See e.g., United States v. Kama, 394 F.3d 1236,

8 - ORDER TO DISMISS

1239 (9th Cir. 2005) ("municipal police departments and bureaus are generally not considered 'persons' within the meaning of section 1983"); Rodriguez v. Cnty. of Contra Costa, Case No. C 13-02516 SBA, 2013 WL 5946112 at *3 (N.D. Cal. Nov. 5, 2013) ("[a]lthough municipalities, such as cities and counties, are amenable to suit under Monell, sub-departments or bureaus of municipalities, such as the police departments, are not generally considered 'persons' within the meaning of § 1983") (citing Hervey v. Estes, 65 F.3d 784, 791 (9th Cir. 1995)). Therefore, plaintiff cannot pursue any § 1983 civil rights claims against the "Multnomah County Jail."

To the extent plaintiff intends to assert a claim against Multnomah County itself, his allegations are also insufficient. A municipal entity is liable under § 1983 only if the plaintiff alleges his constitutional injury was caused by employees acting pursuant to the municipality's policy or custom. Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle, 429 U.S. 274, 280 (1977); Monell, 436 U.S. at 691 (1978). Multnomah County may not be held vicariously liable under § 1983 simply based on allegedly unconstitutional acts of its employees. Board of Cty. Comm'rs. v. Brown, 520 U.S. 397, 403 (1997); Monell, 436 U.S. at 691. Instead, the municipalities may be held liable "when execution of a government's policy or custom . . . inflicts the injury." Monell, 436 U.S. at 694. Plaintiff does not allege facts supporting a claim that the actions allegedly taken by the deputies in this case amounted to execution of a government policy or custom. Accordingly, plaintiff's claims against the "County of Multnomah" and/or the "Multnomah County Jail" must be dismissed.

9 - ORDER TO DISMISS

## CONCLUSION

Based on the foregoing, the Court DISMISSES plaintiff's Complaint. Plaintiff may file an Amended Complaint, curing the deficiencies noted above, within 30 days of the date of this order. Plaintiff is advised that failure to file an Amended Complaint shall result in the dismissal of this proceeding, with prejudice.

Because the Court does not find extraordinary circumstances at this juncture warranting such, the Court DENIES plaintiff's Motion for Appointment of Counsel (ECF No. 5).

IT IS SO ORDERED.

DATED this 13 day of January, 2020.

Michael W. Mosman
United States District Judge